# United States Court of Appeals for the Federal Circuit

---

**EM LOGGING,**
*Appellant*

v.

**DEPARTMENT OF AGRICULTURE,**
*Appellee*

---

2014-1227

---

Appeal from the Civilian Board of Contract Appeals in No. 2397, 2427, Administrative Judge Joseph A. Vergilio.

---

Decided: February 20, 2015

---

RICHARD ALLAN PAYNE, Doney, Crowley, Bloomquist & Uda, Helena, MT, argued for appellant.

ELLEN MARY LYNCH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by STUART F. DELERY, ROBERT E. KIRSCHMAN, JR., BRYANT G. SNEE.

---

Before NEWMAN, MOORE, and TARANTO, *Circuit Judges.*

MOORE, *Circuit Judge*.

EM Logging appeals from the Civilian Board of Contract Appeals' ("the Board") judgment that the United States Forest Service ("the Forest Service") properly terminated a timber sale contract based on EM Logging's flagrant disregard of material contract provisions. Because the record does not contain substantial evidence to support the Board's conclusion that EM Logging flagrantly disregarded the terms of the contract, we *reverse*.

## BACKGROUND

### A.     Contract and Course of Performance

On August 31, 2010, the Forest Service awarded EM Logging a timber sale contract for the Kootenai National Forest in Northern Montana. The contract included two provisions relevant to this appeal regarding EM Logging's transportation of logs from the national forest to weighing locations. "C5.12# – Use of Roads by Purchaser" states in pertinent part that "[a]ll vehicles shall comply with statutory load limits unless a permit from the Forest Service and any necessary State permits are obtained prior to overload vehicle use," ("the load limit clause"). J.A. 1217. "C6.849 – Route of Haul" states in pertinent part that "[a]ll products removed from Sale Area shall be transported over the designated routes of haul," ("the haul route clause"). J.A. 668. It further required that "Purchaser shall notify Forest Service when a load of products, after leaving Sale Area, will be delayed for more than 12 hours in reaching weighing location," ("the notification clause"). *Id.* The contract also included a termination provision, under which the Forest Service terminated the contract at issue. "B9.31 – Termination for Breach" states in pertinent part that the "Contracting Officer, with the concurrence of the Regional Forester, may terminate this contract for breach in the event Purchaser . . . [h]as engaged in a pattern of activity that demonstrates fla-

grant disregard for the terms of this contract," ("the termination clause"). J.A. 1211.

Before transporting logs, EM Logging sent the Forest Service a map highlighting the roads over which it would transport logs. The Forest Service requested, in addition to the map, written descriptions of the proposed haul routes. EM Logging provided written descriptions of the haul routes and requested that it be allowed 24 hours to transport logs to weighing locations because regulations on maximum working time for drivers would make it difficult to meet the notification clause's 12-hour requirement. The Forest Service approved the written descriptions, but denied the request to vary the notification clause.

EM Logging began transporting logs under the contract in November 2010. J.A. 326. Between November 2010 and March 2011, the Forest Service issued six Notifications of Breach. On November 30, the Forest Service issued a Notification stating that EM Logging breached the load limit clause and other terms of the contract not at issue in this appeal. With respect to the breach of the load limit clause, the Forest Service identified one truck load that exceeded 80,000 pounds gross vehicle weight and one truck and trailer load that exceeded 84,500 pounds gross vehicle weight. On January 14, 2011, the Forest Service issued a Notification stating that EM Logging breached the load limit clause, identifying three truck loads that exceeded 80,000 pounds gross vehicle weight and four truck and trailer loads that exceeded 84,500 pounds gross vehicle weight. On January 14, the Forest Service also issued a Notification stating that EM Logging breached the haul route and notification clauses. It stated that EM Logging "had 12 product loads . . . that have been documented as being delayed for more than 12 hours in transit to the approved scaling location," that "[s]ome of these loads were transported over 13 miles one-way off of the approved haul

route and overnighted in Eureka," and that "[r]equired notification about these loads has not been timely or very explicit." J.A. 242.  On January 21, the Forest Service issued a Notification stating that EM Logging breached the load limit clause because one of EM Logging's drivers received a ticket on January 20 for exceeding Montana state weight limits.  The Forest Service also issued Notifications on November 4, 2010, and March 2, 2011, stating that EM Logging breached provisions of the contract regarding washing of equipment, sanitation and servicing, and late payment.  The breaches in these additional Notifications are not at issue in this appeal.

With the Notification sent January 21, 2011, the Forest Service suspended operations and informed EM Logging that the Forest Service was considering terminating the contract for breach.  The Forest Service terminated the contract on March 11, 2011, "for repeated and ongoing disregard for the terms of [the] contract almost from the start of logging and hauling operations . . . ." J.A. 326.

### B.     Board Appeal

EM Logging appealed the termination to the Board. The Board found that EM Logging breached the load limit, haul route, and notification clauses and that "[t]he purchaser's actions with respect to violating the requirements for load limits, notice of delays, and haul routes, each independently establish a basis that alone supports the termination for breach." J.A. 21, 30.

The Board determined that EM Logging breached the load limit clause because it exceeded weight limits established by Montana and the Forest Service.  Although the Board found that the contract does not specify the meaning of "statutory load limits" in the load limit clause, it found that the load limits of a Forest Service Order and Montana state law applied.  The Forest Service Order, issued by the Forest Supervisor of the Kootenai National Forest on February 24, 1986, prohibited trucks exceeding

80,000 pounds gross vehicle weight from travelling over roads in the Kootenai National Forest. J.A. 23. The Board concluded that EM Logging breached the load limit clause because EM Logging hauled 31 loads over Forest Service roads exceeding the Order's weight limit. J.A. 25. It concluded that EM Logging also breached the load limit clause because it exceeded Montana state weight limits, as evidenced by the ticket received on January 20, 2011, and exceeded the weight limits listed on registrations for EM Logging's trucks and trailers. *Id.*

The Board determined that EM Logging breached the haul route clause and the notification clause because it "deviated from the designated haul routes and violated the twelve-hour limitation." J.A. 26. It also noted that EM Logging overnighted trucks at locations not approved by the Forest Service. *Id.*

The Board concluded that these repeated violations "amount to blatant and flagrant violations of material contractual provisions, given that the purchaser had sought, but was denied, deviations, and often was reminded of the requirements." J.A. 29. It therefore upheld termination of the contract. J.A. 30.

One judge dissented, stating that the government did not meet its burden of showing that EM Logging engaged in a pattern of activity that demonstrated flagrant disregard of the contract. J.A. 31. The dissenting judge concluded that the only weight limits applicable to the load limit clause were those under Montana law and the government only proved a single instance—when EM Logging's driver was ticketed—where one of EM Logging's trucks exceeded the Montana limit. J.A. 34–37. The judge concluded that the registrations for EM Logging's trucks did not set forth the weight limits for the load limit clause because the parties never relied on the registrations to prove the weight limits and the registrations alone were inadequate to determine the trucks' total

permissible weights. J.A. 35–36. The judge noted that the single breach evidenced by the ticket did not demonstrate that EM Logging was in flagrant disregard of the contract, particularly because the driver testified that the truck would have complied with Montana limits if the truck had been reconfigured—an apparently common practice. J.A. 36–37. The judge concluded that the Forest Service did not meet its burden of proving that EM Logging violated the haul route clause because the driver adhered to the route map EM Logging submitted to the Forest Service and the government did not prove that the routes identified on the map were not approved. J.A. 39. The judge concluded that the timeliness of delay notifications pursuant to the notification clause should not be a reason to terminate the contract because even the Forest Service realized that, after many loads of products were not arriving within 12 hours, the parties should have entered into an agreement to allow overnighting of trucks. J.A. 39. Thus, the dissenting judge concluded that termination for flagrant disregard of the terms of the contract was not established. J.A. 41.

EM Logging appeals the Board's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(10).

## DISCUSSION

We review the interpretation of a government contract de novo. *Lear Siegler Servs., Inc. v. Rumsfeld*, 457 F.3d 1262, 1266 (Fed. Cir. 2006). We, however, cannot set aside the Board's factual determinations unless they are "(A) fraudulent, arbitrary, or capricious; (B) so grossly erroneous as to necessarily imply bad faith; or (C) not supported by substantial evidence." 41 U.S.C. § 7107(b)(2).

### A.   Basis for Termination

The termination clause relied upon by the Forest Service allowed termination when EM Logging had "engaged

in a pattern of activity that demonstrates flagrant disregard for the terms of this contract . . . ." J.A. 1211. To uphold the termination, we must agree that substantial evidence in the record supports the Board's decision that EM Logging flagrantly disregarded the terms of the contract.

We must first consider the proper interpretation of "flagrant disregard." Merriam-Webster defines "flagrant" as "so obviously inconsistent with what is right or proper as to appear to be a flouting of law or morality." Merriam-Webster's Collegiate Dictionary 475 (11th ed. 2003). This plain meaning is confirmed by the usage of "flagrant disregard" in the contract. In full, the termination clause states that the contract may be terminated if EM Logging:

> Has engaged in a pattern of activity that demonstrates flagrant disregard for the terms of this contract, such as, but not limited to, repeated suspensions for breach pursuant to B9.3, causing undesignated timber meeting Utilization Standards to be unnecessarily damaged or negligently or willfully cut, or causing other serious environmental degradation or resource damage

J.A. 1211–12. Examples of activity that demonstrate flagrant disregard include "repeated suspensions for breach" or causing "serious environmental degradation or resource damage." *Id.* The plain meaning of flagrant and the context of its usage in the contract make clear that termination for "flagrant disregard" must be predicated on more than technical breaches of minor contract provisions or isolated breaches of material contract provisions which caused no damage. The Forest Service, which bears the burden of proof that it properly terminated the contract, must not only prove that EM Logging violated the contract, but that it did so in a way that was in flagrant disregard of the terms of the contract.

### B.   Violation of the Load Limit Clause

The load limit clause states that "vehicles shall comply with statutory load limits . . . ." J.A. 1217. The Board found that EM Logging violated the clause because several loads exceeded the limits set by a Forest Service Order and Montana law.

EM Logging argues that the record only contains a single violation of Montana law. It argues that Montana law, specifically Section 61-10-107 of the Montana Code, limits the weight of a truck based on the truck's number of axles and the distance between the axles. EM Logging argues that the Board erred in concluding that EM Logging violated the load limit clause by exceeding the weight limit set by the Forest Service Order because both parties interpreted "statutory load limits" to include only Montana state limits. It argues that the Forest Service only proved a single violation of Montana law because, except for the ticket it received on January 20, 2011, the record does not contain evidence of the number of axles or distance between axles for other loads, which are required to determine whether a truck exceeds Montana state limits. Thus, it argues that the government has only proven a single violation of the load limit clause.

Moreover, EM Logging argues that the employee who was driving the truck which received the ticket testified that he had forgotten to reconfigure the truck to increase the length between the axles after coming down a mountain with sharp hairpin turns and that, had he reconfigured the truck that day, he would have not received the ticket because the distance between his axles would have brought him into compliance with Montana law. In short, EM Logging argues that it was simply a mistake not to reconfigure the truck. This single instance, EM Logging argues, cannot be considered flagrant disregard.

The government argues that substantial evidence supports the Board's decision. It argues that the Forest

Service Order applies to roads over which EM Logging travelled. It argues that the Forest Service understood that the Order was a statutory load limit because the Forest Service advised EM Logging in the Notifications for Breach that EM Logging needed to comply with load limits for travelling over Forest Service roads and bridges and the Order, rather than Montana law, applies to Forest Service roads and bridges. It argues that although EM Logging only received a single ticket, only receiving one ticket does not mean that EM Logging only exceeded Montana weight limits once. The government argues that EM Logging's actions, including the numerous violations of the Forest Service Order, demonstrate a pattern of flagrant disregard because the violations, including the ticket, came after the Forest Service repeatedly warned EM Logging in the Notifications.

We agree with EM Logging that the government has only proven one violation of the load limit clause. The clause requires EM Logging to comply with "statutory" load limits. J.A. 1217. The Forest Service Order is not a "statute." It is an Order, issued by the Forest Supervisor on February 24, 1986, under 36 C.F.R. §§ 261.50 and 261.54. As such, any violation of the Forest Service Order is not a breach of the load limit clause. Similarly, exceeding the limits listed on EM Logging's registrations, which the Board relied upon, does not breach the load limit clause because they do not define statutory limits. Therefore, the only violation of the load limit clause in the record is the ticket issued to EM Logging on January 20, 2011, one day before the contract was suspended and ultimately terminated. This single isolated violation does not independently rise to the level of flagrant disregard. To be clear, we are not sanctioning the violation of the Forest Service Order, which the government argues was predicated on safety concerns. The only question before us is whether the government established "flagrant disregard" of contract terms, and if failure to comply with

the Forest Service Order is not a violation of a contract term, it cannot justify the government's decision to terminate pursuant to this particular provision.

### C.    Violation of the Haul Route and Notification Clauses

The haul route and notification clauses require that EM Logging transport logs over a designated haul route and notify the Forest Service when deliveries will take more than 12 hours to reach a weighing location.  J.A. 668.  The Board found that EM Logging deviated from the written haul plan and violated the 12 hour requirement when EM Logging overnighted trucks off the haul route. J.A. 26–27.

EM Logging argues that it did not violate the haul route and notification clauses because it travelled over roads highlighted on the map it provided to the Forest Service before starting work and always informed the Forest Service as soon as practicable when a load would be delayed.  It argues that even the alleged violations of the haul route and notification clauses do not demonstrate flagrant disregard.  It argues that even if it breached the haul route clause when one of its drivers took a detour on December 20, 2010, it was a minor violation because the detour was necessitated by illness. There, the driver fell ill while driving the truck to a weighing station and turned around so that he could see a doctor.  He was later diagnosed with bronchial pneumonia.  It argues such a violation does not demonstrate flagrant disregard.  EM Logging further argues that, even if its notifications were untimely, they do not demonstrate flagrant disregard because they were sent as soon as practicable given the paucity of cell phone service in rural Montana.

The government argues that the Board's decision is supported by substantial evidence.  It argues that the written haul plan submitted by EM Logging, rather than

the map it initially submitted, defined the approved haul route. Thus, it argues that EM Logging breached the haul route clause on December 20, 2010, when one of its drivers deviated from the written haul plan even though the driver's route was on the haul map. It argues that EM Logging violated the notification clause because delay notifications were untimely and points to a single notification sent 13 days after a late delivery as unreasonable.

The government argues that these breaches demonstrate flagrant disregard because after EM Logging sought and was denied deviations EM Logging breached the contract. It notes that EM Logging requested the ability to haul on any road highlighted on the map it first submitted to the Forest Service, but was required to submit a written haul plan to designate routes. It argues that EM Logging's actions thus demonstrate flagrant disregard of the haul route clause because EM Logging did not adhere to the written haul plan on December 20, 2010. It notes that EM Logging requested the ability to increase the hauling period from 12 to 24 hours, which was denied. It argues that EM Logging's actions demonstrate flagrant disregard of the notification clause because when EM Logging was unable to comply with the 12 hour requirement, it did not timely notify the government of delay.

We agree with EM Logging that its actions do not provide substantial evidence for a conclusion that EM Logging was in flagrant disregard of the contract. The government's only alleged route deviation was a single, isolated event necessitated by illness. This single instance does not rise to the level of flagrant disregard. The alleged notification violations similarly do not demonstrate flagrant disregard. The parties agree that EM Logging did not need to notify the Forest Service before the 12-hour period expired, but should have done so within a reasonable period after EM Logging became aware of a delay. The record contains evidence of a single

instance in which EM Logging notified the government 13 days after a delayed load was delivered. The record contains evidence of a second instance where EM Logging notified the government four days after a delayed load was delivered. Both deliveries arrived within 48 hours. EM Logging sent both of the delay notifications in November before the Forest Service issued a Notification of Breach for the notification clause. Thus, the record contains two delayed notifications, both sent before the government raised its concerns with EM Logging, and no delayed notifications after the government raised a concern. Two instances of delayed notifications, before the government even noted that such a delay in notification was unreasonable, is not substantial evidence to support a conclusion that EM Logging was in flagrant disregard. The government is not arguing that EM Logging breached the contract by not delivering within 12 hours—the issue is not when did the trucks arrive—the issue is only when did EM Logging notify the government that the delivery of the load took more than 12 hours. These two minor, technical violations of the notification clause do not substantiate termination for flagrant disregard.

### D. Termination

There was one instance of route deviation necessitated by illness, one load limit violation, and two instances of delayed notifications. None of the alleged violations independently substantiate the Board's finding of flagrant disregard. Even together, the four violations are not substantial evidence of a pattern of activity demonstrating that EM Logging's actions were in flagrant disregard of the contract. Substantial evidence does not support the Board's conclusion that EM Logging's actions demonstrated flagrant disregard of contract terms.

Because we conclude that substantial evidence does not support the Board's conclusion that EM Logging

flagrantly disregarded the terms of the contract, we need not reach EM Logging's other arguments.

**REVERSED**

Case: 14-1227　　Document: 38-2　　Page: 13　　Filed: 02/20/2015